# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| PAUL A. CROUCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:14CV1733 CDP |
| | ) | |
| BUSSEN QUARRIES, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Paul Crouch brought this lawsuit to recover early-retirement benefits he believes are due him under the terms of his pension plan. *See* Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* Crouch has sued the trustees of the plan as well as Bussen Quarries, Inc., his longtime employer. He alleges the plan trustees were acting under a structural conflict of interest and abused their discretion by eliminating some of his pension benefits without considering the hardship that would result to him. He also alleges that his employer breached its fiduciary duty to him by acting against his interest when it decided to withdraw from the pension fund.

This action comes before me now on several motions: Bussen's motion to dismiss, the plan trustees' motion for summary judgment, and Crouch's motion to amend his complaint. I will grant the trustees' motion for summary judgment

because there are no disputed material facts and, as a matter of law, they did not violate ERISA (as amended by the Pension Protection Act of 2006) when they eliminated Crouch's early-retirement benefits. I will grant Bussen Quarries' motion to dismiss because, as an employer negotiating a collective bargaining agreement and not exercising any discretionary control over the pension plan or its assets, Bussen was not acting as a "fiduciary" under ERISA and therefore owed no fiduciary duty to Crouch as a matter of law. I will deny Crouch's motion to amend his complaint because he has not complied with the procedural rules for amendments or explained why he waited so long to propose an amendment, and because the amendment he proposes would unduly prejudice the defendants. I will enter final judgment in favor of defendants.

## I.      Background

The material facts (as alleged in the current operative complaint) are not in dispute. In 1972, Crouch began working as a truck driver. In 1979, he was hired to do that same work by Bussen Quarries, where he remained until his retirement in 2011 at the age of 58. Beginning in 1972 and continuing during his employment with Bussen, Crouch participated in an ERISA-governed pension plan. *See* 29 U.S.C. § 1002(2)(A); Docs. 31, 38 ¶ 10 (defendants' statement of uncontroverted material facts and plaintiff's response thereto). Under a series of collective

bargaining agreements between Bussen and the local union that bargained on behalf of Crouch, Bussen agreed to make contributions for Crouch's benefit to the pension plan. (*See* Doc. 31, ¶ 1).

In 2008, that plan – the Central States Southeast and Southwest Areas Pension Fund – slipped into "critical status" as defined by the Pension Protection Act of 2006, Pub. L. No. 109-280 (codified in scattered sections of 26 and 29 U.S.C.). (*See* Def.'s Ex. B, Doc. 31-3, p. 1.) Critical-status plans are funded at less than 65%. 29 U.S.C. § 1085(b)(2). To ensure the plans' continued viability, the PPA requires them to "adopt a plan aimed at restoring [their] financial health."[1] *See* 26 U.S.C. § 432(a)(2)(A), (e). A critical-status fund's strategy for getting back on track is known as a "Rehabilitation Plan." So in 2008, after it was certified by its actuary as a critical-status plan, the Central States Pension Fund established a Rehabilitation Plan as mandated by the PPA.

One component of the Central States Rehabilitation Plan was the elimination or reduction of so-called "adjustable benefits" for certain plan participants. (*See* Def.'s Ex. B, Doc. 31-1, p. 4.) Adjustable benefits include, among other things,

---

[1] "Critical, Endangered and WRERA Status Notices," Employee Benefits Security Administration, U.S. Dep't of Labor, http://www.dol.gov/ebsa/criticalstatusnotices.html (last visited April 22, 2015). The PPA envisions a rehabilitation period of 10 years. The trustees considered the presumptive ten-year period and determined it would involve too much risk, in part because it would "substantially accelerate the rate at which employers would withdraw from the Fund." Instead, the Rehabilitation Plan was designed based on a 20-year rehabilitation period. As such, the trustees project that the fund will emerge from critical status in approximately 2028. (*See* Plan Document, App. M-1, pp. 8-9, Def.'s Ex. B, Doc. 31-3.)

3

early retirement subsidies.  29 U.S.C. §§ 1085(e)(8)(A)(iv)(II).  Although ERISA

generally prohibits reductions in accrued, vested pension benefits, *see, e.g.*, 29

U.S.C. § 1054(g)(2)(A), the PPA creates an exception:  it allows critical-status

funds to cut the amount of adjustable benefits that certain plan participants receive

if the plan sponsor deems it appropriate.  26 U.S.C. § 432(e)(8)(A)(i), (iv)(I); 29

U.S.C. § 1085(e)(1)(B).  All critical-status pension plans have more obligations

than they have money, and in accordance with the PPA, reducing adjustable

benefits frees up funds for other plan obligations.

When Crouch retired in 2011, the Central States fund was governed by a

Rehabilitation Plan, which – in addition to curtailing certain retiree benefits –

required additional contributions from participating employers.  When the latest

CBA between Bussen Quarries and the Teamsters expired in March 2012, Bussen

and the union negotiated away Bussen's obligation to make payments to the

Central States Pension Fund on behalf of its employees.  (Docs. 31, 38 ¶¶ 4, 6, 7.)

Instead, Bussen moved to an employee 401(k) retirement provision.

Under the Central States Rehabilitation Plan, Bussen's decision to stop

contributing to the pension fund triggered a "Rehabilitation Plan Withdrawal"

(RPW).  (Docs. 31, 38 ¶¶ 4, 40, 51, 52.)  The Rehabilitation Plan provided that

when an employer incurs an RPW for any reason, the adjustable benefits of certain

plan participants could be eliminated.  (Doc. 31-4, p.6)  Unfortunately for Crouch,

he was one of those participants: retirees who had started receiving adjustable benefits less than a year prior to the expiration of the CBA requiring employer contributions to the Central States Pension Fund. (Docs. 31, 38, ¶¶ 5, 6.) Crouch's benefits were "adjustable" because they were based on his early retirement. 29 U.S.C. §§ 1085(e)(8)(A)(iv)(II); Doc. 31-4, p.5-6.

In April 2008, Central States provided notice to Crouch and other plan participants that it had been designated as a critical-status plan. (Docs. 31, 38, ¶ 35.) This notice described the circumstances that would cause an RPW, explained that an RPW "will result the elimination or reduction of adjustable benefits," and advised that adjustable benefits "include early retirement benefits such as the ability to receive a pension prior to age 65." *(Id.* ¶ 36.) Central States sent letters to the participants annually thereafter, notifying them that the pension fund remained in critical status. *(Id.* ¶ 38.)

On January 11, 2014, Central States wrote Crouch and informed him that his pension was about to drop from $2,517.44 to $1,725.26 per month. In accordance with the governing Plan Document, Crouch appealed the reduction: first to the Benefit Claims Appeals Committee and then to the plan trustees. Both groups denied his request to restore his benefits to the original amount. Crouch then filed this lawsuit against the trustees and employer Bussen Quarries.

*__Governing Documents__*

At the time of Crouch's administrative appeal, the Fund was governed by its Trust Agreement (Doc. 32-1), its Plan Document (Doc. 31-1 to 31-3), and the Rehabilitation Plan, which was appended to the Plan Document. As required by the PPA, the trustees had updated the Rehabilitation Plan annually and tacked on each yearly version in a successive appendix. (*See* Doc. 31-3, p. 68 (App. M-1), p. 80 (App. M-2, 2010 update), p. 96 (App. M-3, 2011 update); Doc. 31-4, p. 13 (App. M-4, 2012 update), p. 32 (App. M-5, 2013 update))[2]

## II. Discussion

## A. Count I

Crouch's Count I, based on ERISA Section 502, 29 U.S.C. § 1132, is directed against the trustees of the Central States Pension Fund. Crouch alleges that the trustees' denial of his appeal to restore his benefits was arbitrary and capricious, resulted in unjust enrichment to the pension fund, and "should be reversed because the terms of the Rehabilitation Plan are vague and ambiguous and, therefore, Defendant Trustees are estopped from enforcing it." (Comp., ¶ 12.)

---

[2] The Fund was not required to update its Rehabilitation Plan in 2009. The appendices are identical in all respects relevant to this action.

## *Summary Judgment standard*

The defendant trustees have moved for summary judgment on Count I. When determining whether to grant a motion for summary judgment, the court views the facts – and any inferences from those facts – in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). The movant bears the burden of establishing that (1) it is entitled to judgment as a matter of law and (2) there are no genuine issues of material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, however, the non-moving party may not rest on the allegations in its pleadings but must, by affidavit and other evidence, set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c),(e). Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmovant, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 587.

## *ERISA Section 502*

ERISA Section 502 permits three types of claims by an individual participant against a covered plan. *See McGuigan v. Local 295/Local 851 I.B.T Employer Group Pension Plan*, No. 11CV2004, 2011 WL 3421318, at *3-*4

(E.D.N.Y. Aug. 4, 2011) (describing the three types of claims). Although it is not totally clear, Crouch's claim appears to rest on Section 502(a)(l)(B), creating a cause of action to recover benefits due to a participant under the terms of the plan.[3]

### *Section 502 (a)(1)(B)*

Under Section 502(a)(l)(B), when plan documents grant the plan's trustees the discretionary authority to interpret the plan terms and determine eligibility for benefits (as the parties agree they do here, see Docs. 31, 38, ¶¶ 16, 17, 18), the district court reviews their interpretation and determination for an abuse of discretion. *Silva v. Metro. Life Ins. Co.,* 762 F.3d 711, 717 (8th Cir. 2014) (citations omitted). "Under that standard, an administrator's decision is upheld if it is reasonable, that is, supported by substantial evidence," meaning "more than a scintilla but less than a preponderance." *Darvell v. Life Ins. Co. of N. Am.*, 597 F.3d 929, 934 (8th Cir. 2010). The district court must defer to the administrator's interpretation of the plan "so long as it is 'reasonable,' even if the court would interpret the language differently as an original matter." *Id*. at 935.

---

[3] Bolstering this understanding, the parties refer to Count I as a "claim for pension benefits under ERISA" in their Joint Scheduling Plan. (*See* Doc. #28) Section 502 creates two other causes of action, but neither seems to apply. Section 502(a)(3) permits a claim for equitable relief in the case of an ERISA violation, but plaintiff's claims do not seem to fit that provision. *See Pilger v. Seeney,* 725 F.3d 922 (8th Cir. 2013) (claimant whose alleged injury creates a cause of action under Section 502(a)(1)(B) may not also proceed with a claim under 502(a)(3)). Section 502(a)(2) creates a cause of action for breach of fiduciary duty. *See Blankenship v. Chamberlain,* 695 F.Supp.2d. 966, 972-73 (E.D. Mo. 2010). Crouch does not allege the trustees breached any fiduciary duty they may have had to him.

To determine reasonableness, courts consider the following factors: "(1) whether the administrator's language is contrary to the clear language of the plan; (2) whether the interpretation conflicts with the substantive or procedural requirements of ERISA; (3) whether the interpretation renders any language in the plan meaningless or internally inconsistent; (4) whether the interpretation is consistent with the goals of the plan; and (5) whether the administrator has consistently followed the interpretation." *Darvell*, 597 F.3d at 935. "However, the dispositive principle remains that where plan fiduciaries have offered a reasonable interpretation of disputed provisions, courts may not replace it with an interpretation of their own—and therefore cannot disturb as an abuse of discretion the challenged benefits determination." *Id.* (citations omitted).

Where, as here, a pension plan administrator has the "responsibility of both determining eligibility for benefits and also paying those benefits," this dual role may create a conflict of interest necessitating a "less deferential standard of review," which takes into account the conflict "as a factor when determining if an administrator has abused its discretion." *Silva*, 762 F.3d at 718 (citations omitted).

### *The Central States Plan trustees did not abuse their discretion*

The parties have a relatively narrow dispute about how the trustees allegedly abused their discretion. The parties agree that the terms of Central States Rehabilitation Plan governed Crouch's pension and that those terms permitted the

elimination of certain types of adjustable benefits. (See Docs. 31, 38, ¶5.) They agree that Crouch' s early-retirement benefits were subject to elimination because he had retired less than a year prior to Bussen's withdrawal from the Central States Pension Plan, and that this qualified as a "Rehabilitation Plan Withdrawal" under the Plan Document. (*Id.*, ¶¶ 6-7.) The parties also agree that, under the governing trust agreement, the trustees were "vested with discretionary and final authority" in construing plan documents (Doc. 31-1 (Trust Agreement), p. 18, Docs. 31, 38, ¶¶ 16, 17) and adopting rules and regulations to facilitate the proper administration of the trust (Doc. 31-1, p. 14, Docs. 31, 38, ¶ 18).

But Crouch argues that the Plan Document also granted discretion to the trustees to *decline* to eliminate his early-retirement benefits. In deciding not to exercise that discretion, according to Crouch, the trustees did not consider as required the factors enumerated by the Plan Document, including hardship to him as a recent retiree who was not aware that his pension could be cut.[4] Reading

---

[4] In his complaint, Crouch alleges that "[a]t no relevant time, was he informed that there was a possibility that his benefits could be reduced." (Compl.,¶ 12.) Yet he admits that he received notice from the plan when it entered into "critical status," and annually thereafter, and that the notice warned recipients that adjustable benefits could be eliminated if an employer withdrew from the fund. He also admits that he received notice before Bussen Quarries withdrew from the fund. (See Doc. 38, ¶¶ 35-41; see also id. ¶¶ 50-52 (Crouch sent email to Plan about potential elimination of benefits in early 2013)).

Furthermore, the defendants allege in their statement of undisputed material facts that Crouch's pension application contained a notice describing "critical status," the potential elimination of adjustable benefits "including benefits payable before age 65," and that elimination of benefits might occur "even for participants who have already retired and already begun receiving their pensions." The defendants allege that Crouch signed that application in 2010, on the very page where the warning was displayed. (See Defs.' Ex. C, p. 51.) In his

Crouch's complaint liberally, he alleges this was an unreasonable interpretation of the plan terms, and insofar as it formed the basis of the trustee's denial of his appeal, that decision should be overturned.

Taking all the facts and their inferences in the light most favorable to him (which are undisputed in all material respects), this allegation fails as a matter of law. Even assuming the language Crouch points to[5] required the trustees to consider hardship to him before reducing his benefits (which it does not[6]), it appears in a section of the Plan Document inapplicable to his situation. The provision he relies upon applies to Rehabilitation Plan Withdrawals "resulting from an administrative termination of a Contributing Employer" or other like circumstances where an employer violates the pension fund's rules, and specifically not to RPWs resulting from an employer signing a new collective

---

response, Crouch denies this. (Doc. 38, ¶ 45.) However, by way of explanation for his denial, he cites only to this signature page and not to any evidence of record that would raise a genuine dispute of fact. This is insufficient to specifically and properly controvert this statement of fact in accordance with L.R. 7-4.0l(E). *See Donnelly v. St. John 's Med. Ctr.,* 635 F. Supp. 2d 970, 975 n. l (E.D. Mo. 2009). In any event, Crouch does not allege that the trustees violated the notice provisions of the PPA, perhaps because he recognizes that he has not presented any evidence thereof.

[5] There appears to be some dispute about whether the 2012 or 2013 Rehabilitation Plan governs here, but there is no material difference. (Compare Doc. 31-4, pp. 42-43 with Doc. 31-4, pp. 24-25.) See also *Blessing v. Deere & Co*., 985 F. Supp. 899, 903 (S.D. Iowa 1997) ("ERISA cause of action based on a denial of benefits accrues at the time the benefits are denied") (citing *Mason v. Aetna Life Ins. Co.*, 901 F.2d 662, 664 (8th Cir. 1990)).

[6] The clause provides that "the Board of Trustees **shall have full discretionary authority** to consider, weigh and balance the following factors [including hardship to participants] in determining whether a Rehabilitation Plan Withdrawal has occurred," not, as Crouch incorrectly quotes this section, that the trustees "shall consider, weigh and balance" hardship and other factors. *(Id.* p. 42.)

bargaining agreement that does not include contributions to the Central States plan. It was not unreasonable for the trustees to fail to apply this provision to Crouch because the RPW in his case was triggered by Bussen Quarries' new CBA.

There is no other disagreement of law or fact. Crouch agrees that the Plan Document (in accordance with the PPA) allowed the trustees to eliminate adjustable benefits, that his early-retirement benefits were properly classified as "adjustable," and that the trustees had discretion to interpret the terms of the Plan Document and make benefit determinations in accordance with that interpretation. He does not argue that the trustees interpreted the plan in a way that was contrary to its clear language, rendered any plan language meaningless or internally inconsistent, violated the plan's goals, or conflicted with ERISA' s requirements. *See Darvell*, 597 F.3d at 935. Crouch has not identified any other provision in the Plan Document that he considers ambiguous or that might provide a basis for overturning the trustees' decision to reduce his early-retirement benefits or deny his appeal to restore those benefits.

Crouch argues that the trustees were operating under a structural conflict of interest because the Central States trustees controlled both the administration of the plan and its funding source. *See Silva*, 762 F.3d at 718. The conflict of interest, says Crouch, incentivized the trustees to "seize upon any opportunity to deny benefits." According to Crouch, in light of the trustees' competing loyalties—to

plan beneficiaries and to the financial health of the plan itself—this court's abuse-of-discretion review of their decision to eliminate Crouch's benefits should be less deferential than it otherwise would be. *See Met. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008). But even assuming the fact that Central States both funds and administers the pension plan is a conflict of interest that this court should consider in assessing the trustee's reasonableness, Crouch has not submitted any evidence showing that this is "a close case in which the conflict of interest likely tipped the balance." *Jones v. ReliaStar Life Ins. Co.,* 615 F.3d 941, 946 (8th Cir. 2010) (where insurer acting as funder and administrator admitted a conflict of interest, but its "reading of the provisions is not only reasonable, but plainly the better interpretation," that conflict of interest would not render its interpretation an abuse of discretion). As the trustee's determination was reasonable, they are entitled to summary judgment.

## B.     Count II

Crouch directs his Count II (alleging breach of fiduciary duty under ERISA) against his former employer Bussen Quarries. *See* 29 U.S.C. § 1132(a)(2). He alleges that he worked for Bussen for many years in reliance upon his expectation that he would receive a certain pension benefit upon retirement. He alleges that Bussen never warned him about the possibility that it would withdraw from the Central States Pension Fund or how Crouch could protect his benefits in the event

13

of a withdrawal.  He alleges that Bussen's negotiation of a new collective bargaining agreement with his union and the ensuing withdrawal from the Central States plan amounted to a breach of fiduciary duty, because it was a failure to act solely in Crouch's interest as a participant.  *See* 29 U.S.C. § 1104.

## *Motion to dismiss standard*

Bussen Quarries has moved to dismiss under Fed. R. Civ. P. 12(b)(6).  A 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint so as to eliminate claims "which are fatally flawed in their legal premises . . . , thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Neitzke*, 490 U.S. at 326-27).  When considering a motion to dismiss, the court assumes the factual allegations of a complaint are true and construes them in favor of the plaintiff. *Neitzke v. Williams,* 490 U.S. 319, 326-27 (1989). However, it properly disregards "unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol lndem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002).

## *Employer was not acting as plaintiff's fiduciary*

To establish a breach of fiduciary duty under ERISA, a plaintiff must first demonstrate that the defendant was acting as a fiduciary when he or she took the action complained of.  *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000); *Ince v.*

*Aetna Health Management, Inc.*, 173 F.3d 672, 674 (8th Cir. 1999). Any person is

a fiduciary "to the extent" he or she:

> exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or . . . has any discretionary authority or discretionary responsibility in the administration of such plan.

*Ince,* 173 F.3d at 674-75 (quoting 29 U.S.C. § 1002(21)(A)); *see also Coleman v.*

*Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir. 1992) ("a party is a fiduciary

only as to the activities which bring the person within the definition").[7]

Crouch argues that Bussen Quarries was acting as his fiduciary when it

negotiated a new collective bargaining agreement with his union such that it

withdrew from the Central States Pension Plan. He argues that Bussen's

withdrawal was undertaken upon its own initiative and was thereby

"discretionary," bringing it within the ERISA definition of a functional fiduciary.

Taking the allegations as true and construing them in the light most

favorable to Crouch, he has not alleged and cannot demonstrate that Bussen

Quarries was acting as his fiduciary. It is well settled that an employer is not acting

as a fiduciary when it is acting in its role as a sponsor making a decision about

what benefits to offer its employees. *See, e.g.*, *Hughes Aircraft Co. v.*

---

[7] A party may also be designated as a fiduciary within a plan instrument, *see* 29 U.S.C. §§ 1102(a)(2), 1002(38), but Crouch does not allege Bussen Quarries was so designated.

*Jacobson*, 525 U.S. 432, 443 (1999) (employers are "generally free under ERISA, for any reason at any time, to adopt, modify, or terminate [pension] plans") (quoting *Lockheed  Corp. v. Spink*, 517 U.S. 882, 890 (1996));  *United Paperworkers Int'l Union*, *AFL-CIO, CLC v. Jefferson Smurfit Corp*., 961 F.2d 1384, 1386-87 (8th Cir. 1992) (quoting *Musto v. Am. Gen. Corp*., 861 F.2d 897, 911 (6th Cir. 1988) ("There is a world of difference between administering a welfare plan in accordance with its terms and deciding what those terms are to be. A company acts as a fiduciary in performing the first task, but not the second.")); *Amato v. W. Union Int'l Inc.,* 773 F.2d 1402, 1416-17 (2d Cir. 1985) (employers are not fiduciaries "when they conduct business that is not regulated by ERISA"); *Noorily v. Thomas & Betts Corp*., 188 F.3d 153 (3d Cir. 1999).  This is all Bussen Quarries was doing when it negotiated with the union to make benefit contributions to some other fund and thereby withdraw from the Central States Pension fund:  terminating its participation in a pension plan.  That this had the effect of reducing Crouch's benefits is not enough to make Bussen legally responsible for that result under ERISA.

Crouch argues that *Phillips v. Amoco Oil Company*, 799 F.2d 1464 (11th Cir. 1986), supports his position that Bussen Quarries violated its duty to him when it negotiated away its obligation to make contributions to the Central States Pension Fund.  *Phillips* actually weakens Crouch' s argument.  In that case, the

defendant employer (Amoco) had maintained an ERISA-governed pension plan for its employees. When Amoco sold its business to someone else, it negotiated away the valuable years-of-service credit that its participating employees had accumulated toward early retirement benefits. The circuit court rejected the argument that Amoco had been acting as a fiduciary, holding that ERISA did not prevent it from it from bargaining away the years-of-service credit in order to maximize the sale price. Amoco had been acting in its capacity as a business when it undertook to negotiate; it was not acting as an administrator of the retirement plan. *Id*. at 1471. To the extent Crouch attempts to distinguish *Phillips* based on its language distinguishing vested, accrued benefits from contingent, non-accrued benefits, he is reminded that the Pension Protection Act of 2006 explicitly allowed the reduction or elimination of certain accrued benefits, including the benefits at issue here. *See* 26 U.S.C. § 432(e)(8)(A)(i), (iv)(I); 29 U.S.C.§ 1085(e)(1)(B) *Schwarz v. UFCW-N.Cal. Emp. Jt.Pens.Pl.,* No. C13-00977LB, 2014 WL 186647 at *8, (N.D.Cal. Jan. 16, 2014).

Bussen might have been acting with "discretion" but it was not exercising any authority or control over the Central States fund or its assets. Crouch has not alleged that Bussen managed or administered the Central States fund at any time relevant to this matter. *Hickman v. Tosco Corp*., 840 F.2d 564, 566 (8th Cir. 1988) ("ERISA does not prohibit an employer from acting in accordance with its interests

as employer when not administering the plan or investing its assets") (internal quotation marks and citation omitted).  Because Crouch has not alleged any facts that could support a claim that Bussen was acting as a fiduciary, his claim that it breached its fiduciary duty to him must fail as a matter of law.

## C.    Motion To Amend Complaint

On April 30, 2015, Crouch moved to amend his complaint. In that motion, he states that the timeline for the events described above is materially different than he thought.  He maintains that he began receiving early-retirement benefits on June 1, 2011.  However, he now states that he has "newly discovered evidence" that the collective bargaining agreement between Bussen and his union did not expire less than a year later, triggering a Rehabilitation Plan Withdrawal and the elimination of his adjustable benefits.  He argues that instead, pursuant to an "evergreen provision" in the governing CBA, it continued until a successor CBA could be negotiated.  Crouch now states that a new agreement was not in place until at least September 16, 2013, and perhaps longer.  Therefore, according to Crouch and in accordance with the evergreen provision, the CBA he relies upon was still in effect until at least September 2013.  Since he had retired more than a year prior to that date, Crouch now argues he is entitled to benefits on this basis.

Crouch has failed to attach his proposed amended complaint to his motion, and I could deny it on this basis alone.[8] *See Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 495-96 (Fed. R. Civ. P. 15 requires a movant to attach a proposed amended complaint to his motion); *Meehan v. Utd. Consumers Club Franchising Corp.*, 312 F.3d 909, 13 (8th Cir. 2002). But there are several other reasons why justice would not be served by permitting this amendment now.

First, it is simply not clear that this new theory of recovery has any potential for success. *See United States ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 750 (8th Cir. 2005) (quoting *Meehan*, 312 F.3d at 914). It is based on a provision of the collective bargaining agreement, which Crouch also has failed to incorporate into his motion, thereby limiting this court's futility analysis. *See Toussie v. Town Bd. of East Hampton*, 874 F.Supp.2d 135, 141-42 (E.D.N.Y. 2012); *BJC Health Sys. v. Columbia Cas. Co.,* 348 F.3d 685, 688 (8th Cir. 2003). Crouch argues that the evergreen provision extended the CBA, but the language he quotes also provides that any new agreement would be made retroactive to the termination date of the governing CBA. Whether this provision would apply is an open question, however, because this court also does not have the successor agreement Bussen Quarries made with the union (or perhaps with a different bargaining unit

---

[8] Even though the defendants drew attention to this oversight in their opposition, Crouch failed to reply or otherwise correct this error.

altogether). Without examining the CBA itself, I cannot assume its effect would be what Crouch says it is.[9]

Furthermore, Crouch has unduly delayed this proposed amendment and has given no reason for his tardiness. *See Bell v. Allstate Life Ins. Co.,* 160 F.3d 452, 454 (8th Cir. 1998). Although there was no court-imposed deadline for pleading amendments, Crouch represented to the court in the proposed schedule that he would make any necessary amendments no later than January 12, 2015. This motion comes three months after that date, and two months after dispositive motions were fully briefed. He fails to explain whether he acted diligently in procuring this "newly discovered evidence," or why – as it appears to be based on a document he presumably already controlled – it could not have been raised earlier.[10]

Finally, allowing this amendment would cause undue prejudice to the defendants. *Bell*, 160 F.3d at 454 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Crouch has expressly admitted all the facts he now calls into question, and the defendants relied on those representations in preparing their briefs. (*See* Docs. 38, 42, 43.) The proposed amendment involves a different legal theory than that

---

[9] In this case in particular, evaluating the CBA itself would be critical to determining whether this claim is futile because Crouch has misquoted or misinterpreted several relevant provisions from the Plan Document. Therefore, his representations of the CBA within the motion must be taken skeptically.

[10] Instead of "newly discovered evidence," it appears that Crouch is really simply arguing that he re-read the documents and came up with a new argument.

presented in the original complaint. *See Bell*, 160 F.3d at 454. It would necessitate additional discovery, *see Popoaqliai*, 512 F.3d at 497, which was already limited by agreement of the parties (*see* Doc. 28) and as required for ERISA benefit claims.  Perhaps most importantly, Crouch failed to make this argument to the pension plan trustees in his administrative appeal, which is a prerequisite to bringing a denial-of-benefits claim in federal court.  *See Galman v. Prudential Ins. Co. of Am.*, 254 F.3d 768, 770 (8th Cir. 2001).

For all these reasons, I will deny Crouch's motion to amend his complaint.

### III.    Conclusion

Based on the foregoing,

**IT IS HEREBY ORDERED** that the motion for summary judgment [#29] by defendants Arthyr H. Bunte, Jr., Gary F. Caldwell, Ronald DeStefano, Marvin Kropp, Greg R. May, George J. Westley, Charles A. Whobey, and Jerry Younger is granted.

**IT IS FURTHER ORDERED** that:

Defendant Bussen Quarries, Inc.' s motion to dismiss Count II [#21] is granted and its motion for hearing [#41] is denied as moot.

Plaintiff Paul Crouch's motion to amend his complaint [#44] is denied.

All other pending motions are denied as moot.

A separate judgment in accord with the Memorandum and Order is issued

today.


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 19th day of August, 2015.